## In re SCOTT.

(*District Court, D. California.* January 31, 1880.)

1. BANKRUPTCY—CONCEALMENT.

The concealment contemplated by the statute is a wilful and fraudulent concealment, and not a mere omission through mistake or accident.

2. SAME—PREFERENCE.

If a bankrupt devotes materials to an inconsiderable amount, which he had procured for family use, to secure a creditor for a small debt, the act cannot be deemed a fraudulent preference.

*Daniel T. Sullivan,* for bankrupt.

*Wright & Hammond,* for opposing creditors.

HOFFMAN, D. J. The objections relied on at the hearing of this case were:

1. That the bankrupt obtained a considerable sum of money from one of his creditors on the fraudulent pretence that he would give his note therefor indorsed by one Moss, which indorsement he failed to procure. The proofs fail to support this objection. The bankrupt undoubtedly promised to procure the indorsement referred to, but he made this promise in good faith, and with reasonable ground to believe in his ability to fulfil it. The parties chose to furnish him the money without exacting the fulfilment of the promise. He made no false pretence within the meaning of the criminal law, for he merely undertook to do a certain thing *in futuro,* and, so far as appears, he would have redeemed his promise had not subsequent events induced the party on whom he relied to change his mind. Moreover, the fact that one or more of his debts has been created by

the fraud of the bankrupt is not declared by the act to be a ground for refusing the discharge from his other liabilities. Debts created by fraud are not affected by the discharge, and if the debt in question in this case be of that character, the creditor may sue and recover judgment upon it, notwithstanding the discharge.

2. The second ground of objection is that the bankrupt has concealed a part of his estate or effects. The property alleged to have been concealed was a toll-bridge, which the bankrupt had erected, either upon or leading to his farm, and for the use of which by his neighbors he had been accustomed to collect a small toll, under a franchise or license obtained from the state. The concealment contemplated by the statute is evidently a wilful and fraudulent concealment of his effects, and not a mere omission to mention them through mistake or accident. If the concealment complained of be of the franchise or license which the bankrupt had obtained from the state, it is sufficient to say that a franchise to construct a turnpike road and collect tolls thereon, or to run a ferry, and the like, is a personal trust reposed in the grantee, and is not assignable, either at forced sale or by voluntary conveyance, without the consent of the granting party. Monroe v. Thomas, 5 Cal. 470; Thomas v. Armstrong, 7 Cal. 286. And in People v. Duncan it was held that such a franchise does not pass, by virtue of the assignment, to the assignee in bankruptcy. 41 Cal. 507. There can, of course, be no fraudulent concealment of property which is not assets of the estate upon which the creditors can make no claim, and in which the assignee in bankruptcy can acquire no interest. If the concealment complained of be the failure to mention the existence of the structure which he had erected, either wholly or in part, upon his land, the answer to this objection is that there seems to be no reason why he should describe that structure, any more than any other fixture or improvement attached to his freehold. His farm is described in his schedules, and that description includes the barns, stables, pig-pens, or bridges upon it, as much as the orchards or vineyards which may have been planted upon it. Certainly there could be no intention, as there could have been no possibility, of concealing the existence of a bridge, which, as appears, was absolutely necessary to afford access to the farm, or at least a portion of it.

3. It is further objected that the bankrupt gave a "fraudulent preference" to one Emerson, contrary to the provisions of the act. It appears that, after the bankrupt had been attached by some of his creditors, he gave to Emerson a horse, as security for a debt due him

on an unsettled account amounting to $25 or $30. He subsequently, with Emerson's consent, withdrew the horse and substituted for it some dry goods and material for clothing. The greater part of this Emerson subsequently returned to the bankrupt, retaining, as he says, about $15 worth. All the goods returned to the bankrupt were afterwards used by him for clothing his numerous family.

I am inclined to think that a transaction of this character, so insignificant so far as the amount involved is concerned, hardly constitutes such a fraudulent preference as will deprive him of the benefit of the act. The statute of the state, which is not only very liberal in its provisions, but which is liberally construed by the courts, exempts from forced sale wearing apparel of the debtor, three months' provisions actually provided for individual or family use, etc. The law does not, in terms, require that the wearing apparel shall have been in actual use, or that the materials for it shall have been actually fashioned into garments ready for use.

The testimony does not disclose distinctly of what the dry goods delivered to Emerson consisted. No inventory appears to have been taken. They were hastily packed in a valise and a bag by the bankrupt and his wife. Among the goods some 50 yards of flannels and several dress patterns, already cut out, are mentioned. Their total value was probably not more than forty or fifty dollars. The bankrupt was not a trader or shop-keeper. He was a farmer, and the goods had, in all probability, been obtained for family use. To that use they were subsequently applied, with the exception, before stated, of $15 worth retained by Emerson. I am inclined to think that if the bankrupt had been, at the time of the bankruptcy, in possession of these goods, and had omitted to mention them specifically in his schedules, he would not have been liable to the charge of a fraudulent concealment of his assets. If he has chosen to devote materials for clothing to an inconsiderable amount, which he had procured for the use of his wife and children, to secure a creditor for a small debt, the act can hardly be deemed a fraudulent preference within the meaning of the twenty-ninth section of the bankruptcy law, even though it should turn out, on critical examination, that some of the articles were not included in the term "wearing apparel," and were thus not within the protection of the exemption law. If they, in fact, were within that protection, it is needless to observe that no fraud upon his other creditors could have been committed by any disposition he might make of them. They were not part of his

assets, and in no way liable for his debts, except so far as he might choose so to apply them.

On the whole, I agree to the conclusion reached by the register that the creditors have failed to maintain their specifications of objections to the bankrupt's discharge.